**Antonio AGUILERA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–00–00509–CR.**

Court of Appeals of Texas, San Antonio.

Feb. 6, 2002.

Christopher J. Gale, Gale, Wilson & Sanchez, P.L.L.C., San Antonio, for Appellant.

Jose M. Rubio, Jr., Webb County Dist. Atty., Raul A. Martinez, Asst. Dist. Atty., Laredo, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice.

Opinion by PHIL HARDBERGER, Chief Justice.

Antonio Aguilera ("Aguilera") was found guilty by a jury of three counts of indecency with a child and three counts of aggravated sexual assault. Aguilera presents nine issues in his brief, contending: (1) the jury was instructed pursuant to an "amended" but unaltered indictment; (2) hearsay statements were erroneously admitted; (3) evidence of the complainant's prior sexual history was erroneously excluded; (4) an opinion regarding the truthfulness of the complainant was erroneously admitted; (5) "profile" evidence that Aguilera was a "molester" and a "pedophile" was erroneously admitted; (6) Aguilera elected for the trial court to assess punishment but punishment was submitted to the jury; (7) Aguilera was denied effective assistance of counsel; and (8) the evidence was legally insufficient to convict Aguilera of count three. We sustain Aguilera's second, third and fourth issues and reverse the trial court's judgment. Other than the second, third and fourth issues, we address only those issues that are necessary to the final disposition of the appeal. TEX.R.APP. P. 47.1.

### BACKGROUND

On January 1, 1999, Amber Smith (a pseudonym) informed her boyfriend that her stepfather, Aguilera, had sexually abused her for a number of years. Smith was living with her grandmother, but was scheduled to move back into the home of Aguilera's mother because Aguilera and Smith's mother had reunited. At her boyfriend's urging, Smith informed her aunt, and the police were summoned. Ultimately, a jury found Aguilera guilty of three counts of indecency with a child and three counts of aggravated sexual assault. On two counts, the jury assessed punishment at 99 years imprisonment and a $5,000 fine. On the other four counts, the jury assessed punishment at life imprisonment and a $5,000 fine. Aguilera timely filed this appeal.

### AMENDMENT OF INDICTMENT

In his first issue, Aguilera complains that the trial court erred in allowing the State to proceed on an "amended" indictment because the amendment was not effective.

The original indictment omitted the phrase "with the intent to arouse and gratify his own sexual desire" from the counts charging Aguilera with indecency with a child. The State moved to amend the indictment to add the phrase. The trial court granted the motion and issued an order restating the language from the original indictment in its entirety with the phrase added. Aguilera contends that the amendment was not effective.

In *Riney v. State*, 28 S.W.3d 561 (Tex. Crim.App.2000), the Texas Court of Criminal Appeals considered the continuing precedential value of *Ward v. State*, 829 S.W.2d 787 (Tex.Crim.App.1992). In *Riney*, the court overruled *Ward* and the cases relying on it, to the extent they require physical interlineation of the original indictment as the only means to accomplish an amendment. 28 S.W.3d at 566. The court asserted, "Physical interlineation of the original indictment is an accept-

able but not the exclusive means of effecting an amendment to the indictment." *Id.* at 565.

██ Aguilera asserts that the following statement made by the court in *Riney* supports his contention that the order was not effective as an amendment, "We note that *Ward v. State* continues to stand for the proposition that '[n]either the motion [to amend] itself nor the trial judge's granting thereof is an amendment; rather the two comprise the authorization for the eventual amendment of the charging instrument pursuant to Article 28.10.'" 28 S.W.3d at 566. However, the Fort Worth court has held that a written order granting the State's motion to amend, in which the language of the original indictment is reproduced, is an effective amendment. *Valenti v. State,* 49 S.W.3d 594, 598 (Tex. App.-Fort Worth 2001, no pet.). We follow the holding in *Valenti* and conclude that by reproducing the language of the original indictment with the amendment in the order, the amendment was effective.

Aguilera's first issue is overruled.

### OPINION ON TRUTHFULNESS

██ In his fourth issue, Aguilera contends that the trial court erred in allowing Dr. Gregorio Piña, III, Smith's psychologist, to testify regarding Smith's truthfulness. The State responds that the issue is not preserved for appellate review because no specific objection was made to Dr. Piña's testimony. The State further responds that Dr. Piña's testimony was not an opinion on Smith's truthfulness.

We review the trial court's ruling regarding the admissibility of evidence under an abuse of discretion standard. *Salazar v. State,* 38 S.W.3d 141, 153–54 (Tex.Crim. App.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 127, 151 L.Ed.2d 82 (2001). Aguilera's complaint relates to the following testimony:

Q. In the course of your practice as a psychologist with children who have been victims of sexual abuse, have you ever encountered any children that lied?

A. Yes, sir.

Q. What percentage of children would you estimate, out of all the patients that you've seen, what percentage of children did you find to be lying?

A. Consistently, since about 1973, in training. About one out of ten, about ten percent there is something that does not come together; and that has stayed through time with me since that time to the present, ten percent.

Q. And what kind of a test—what kind of testing or evaluation, or what kind of psychological evaluating tools do you use to test as far as that is concerned?

A. The strongest is—there is not a test. It is the—

MR. RAMIREZ: Your Honor, again, he's already asked and answered. He asked what kind of test he used, he said, there's no test, asked and answered.

Q. (BY MR. RAUL MARTINEZ) Are there any tools that are available during treatment?

MR. RAMIREZ: Judge, may I approach the bench?

THE COURT: Yes, sir.

(At the Bench, on the record)

MR. RAMIREZ: One of our motions in limine was that they not go into all the—

(Counsel speaking simultaneously)

MR. RAUL MARTINEZ: No, Judge, I'm just asking—

THE COURT: Well, but if you're going there, don't go.

MR. RAUL MARTINEZ: No, I'm not going there.

THE COURT: All right.

(End of Bench conference)

Q. (MR. RAUL MARTINEZ) Do you recall my question?

A. I'll rephrase your question which is: Are there any tools in treatment? And I'd say, any tools in evaluation.

Q. I'm sorry. Yes, let me rephrase. Are there any tools in evaluating the psychological evaluation that can help you determine if a child is lying?

A. Yes, sir.

MR. RAMIREZ: Your Honor, I would object. It's the same objection. I made it before the bench, and I'll ask for a mistrial at this time.

MR. RAUL MARTINEZ: Your Honor, I'm asking in general.

THE COURT: The objection is overruled.

Q. (BY MR. RAUL MARTINEZ) You may answer the question, Dr. Piña.

A. I understood the question: Are there any tools and evaluation that help to identify the ten percent who are malingering, lying, being deceitful?

Q. That is correct.

A. Okay. The reason we have this procedure with the Children's Advocacy—

MR. RAMIREZ: You Honor, I would object to the narrative. He was asked: Are there any tools that are available to him on the ten percent. It just requires a yes or no answer.

Q. (BY MR. RAUL MARTINEZ) Your answer to the question, Dr. Piña? You may answer.

A. The answer is yes, sir.

Q. Okay. And when you make a finding, a psychological finding the child may be lying, do you still continue

to provide services to those children as well?

MR. RAMIREZ: Your Honor, I would object, you know, to this—

THE COURT: Yes, the objection is sustained.

MR. RAMIREZ: And I would ask for a mistrial on this case.

THE COURT: The mistrial is denied. Ladies and gentlemen of the jury, disregard that last question.

Q. (BY MR. RAUL MARTINEZ) Dr. Piña, one last question: In terms of your conversations with Amber Smith, in terms of your observations of the videotape, did you find her story to be consistent throughout the time?

A. Yes.

■ In order to preserve error for appellate review, the record must show that a complaint was made to the trial court by an objection that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. TEX. R.APP. P. 33.1(a). Because the attorneys were speaking simultaneously at the bench, the specific objection made by Aguilera's attorney is unclear; however, the specific grounds for the complaint are apparent from the context of the questioning. The prosecutor's statement in response to Aguilera's objection that he was just "asking in general" implies that the trial court permitted questioning regarding the truthfulness of the class of child abuse victims in general, but not the truthfulness of Smith.

■ The Texas Court of Criminal Appeals has held that an expert is not permitted under rule 702 of the Texas Rules of Evidence to give an opinion that the com-

plainant or a class of persons to which the complainant belongs is truthful. *Yount v. State,* 872 S.W.2d 706, 712 (Tex.Crim.App. 1993). In reaching its holding, the court relied on cases holding that expert testimony that child sexual abuse victims rarely lie is inadmissible. *See id.* Therefore, the trial court abused its discretion in admitting Dr. Piña's testimony.[1]

■ Aguilera's defense was based on his contention that Smith was fabricating the sexual abuse allegations to avoid moving out of her grandmother's house because her grandmother was lax as a disciplinarian and her grandmother lived just a few blocks from Smith's boyfriend. Therefore, the outcome of the case depended on whether the jury believed Smith to be credible or believed that she had fabricated the charges to avoid moving. As a result, Aguilera's substantial rights were affected when the trial court improperly admitted opinion testimony regarding the truthfulness of the class of victims to which Smith belonged. *See* Tex.R.App. P. 44.2(b)

Aguilera's fourth issue is sustained.

## Prior Sexual History

■ In his third issue, Aguilera contends that the trial court erred in excluding evidence of Smith's prior sexual history in view of the nurse practitioner's testimony that Smith had no physical indications of sexual activity. The evidence excluded by the trial court was that Smith had voluntary sexual intercourse with her boyfriend during the year after she had been sexually abused by Aguilera. Aguilera asserts that the evidence

was admissible to rebut or explain medical evidence offered by the State or to prove Smith's motive or bias. The State responds that the error was not preserved for appellate review, the evidence would not rebut or explain the nurse practitioner's testimony, and the probative value of the evidence was outweighed by danger of unfair prejudice.

■ We review the trial court's decision to exclude evidence under an abuse of discretion standard. *Salazar v. State,* 38 S.W.3d at 153–54. Evidence of specific instances of Smith's past sexual behavior is not admissible unless: (1) Aguilera informed the court out of the jury's hearing of his intent to offer the evidence; (b) the trial court conducts an in camera hearing to determine if the proposed evidence is admissible; (c) the evidence is necessary to rebut or explain medical evidence offered by the state or relates to Smith's motive or bias; and (d) the probative value of the evidence outweighs the danger of unfair prejudice. Tex.R. Evid. 412.

Patricia Leal, the nurse practitioner who examined Smith, testified regarding the details of her examination and the statements Smith made to her regarding the sexual abuse. Leal testified that the examination was, "within normal limits," meaning "there was no indication or no assessments of any lesions, lacerations, any type of abnormality that would lead me to document that in her chart." Leal testified that it is not uncommon for child victims of sexual abuse to have a normal exam because of the potential for young girls to heal. Leal testified that the lack of medical signs can be attributed to: (1)

---

1. Neither party addresses whether the testimony would be admissible under rule 608 as rebuttal evidence in view of Aguilera's efforts to question Smith's credibility during cross-examination. However, "merely asking questions designed to cast doubt upon a witness' character for truthfulness should not ordinarily be sufficient to open the door to evidence supporting the truthfulness of specific allegations." *Schutz v. State,* 957 S.W.2d 52, 72 (Tex.Crim.App.1997).

the time between the incident and the medical examination; and (2) the age of the girl. Leal testified that the estrogen present in a teenage girl, who is of puberty age, can produce an intact hymen if time has lapsed between the incident and the exam.

After Leal testified, Aguilera's attorney approached the bench and informed the trial court that he intended to offer Smith's previous sexual history. The trial court recessed the jury, and a hearing was conducted. Aguilera's attorney informed the court that he intended to introduce the portion of Smith's medical history that stated she had voluntary sexual intercourse with her boyfriend. Aguilera's attorney stated that he wanted to question whether estrogen could cause the hymen to be intact even if Smith admitted to having voluntary sexual intercourse with her boyfriend. The trial judge responded that Leal did not testify that anyone had sexual intercourse with Smith, and Leal's testimony did not prove that Smith was sexually abused; therefore, the evidence of her prior sexual intercourse did not rebut any medical evidence.

█ Because Aguilera did not assert that the evidence was admissible to show bias or motive, he did not preserve that complaint for appellate review. See TEX. R.APP. P. 33.1. However, at trial, Aguilera contended that Smith's prior sexual history was admissible under rule 412 to rebut medical evidence offered by the State, and this complaint is preserved for our review.

Aguilera informed the court out of the jury's hearing of his intent to offer the evidence, and the trial court conducted a hearing to determine if the evidence was admissible. The trial court determined that because Leal's testimony did not prove Smith was sexually abused, evidence of her prior intercourse would not be rebuttal evidence; therefore, the evidence

was excluded as being unnecessary to rebut or explain medical evidence not because the trial court believed the evidence was unfairly prejudicial.

Leal's explanation of her examination findings is medical evidence. The evidence of Smith's prior sexual intercourse rebuts this medical evidence because Leal proffered the lapse in time from the date of the incident as an explanation for her findings. However, the proffered explanation, and the credibility of Leal's testimony, could be rebutted if the extent of the lapse in time is refuted by evidence of Smith's voluntary sexual intercourse in the interim. The evidence is highly probative in assessing the credibility of Leal's medical explanation of the normal examination in view of the allegations. Because the evidence of Smith's prior sexual history directly rebuts the explanation proffered by Leal for her medical findings, the trial court erred in excluding the evidence.

Aguilera's third issue is sustained.

### EXCITED UTTERANCE

█ In his second issue, Aguilera complains that the trial court erroneously admitted the hearsay statements made by Smith to her boyfriend and her aunt. The trial court admitted the statements under the excited utterance exception to the hearsay rule. Aguilera contends that the exception did not apply because the statements were made nearly one year from the date of the most recent allegation of sexual abuse.

█ We review the trial court's ruling admitting the statements made by Smith to her boyfriend and aunt under an abuse of discretion standard, meaning that we will uphold the trial court's decision if it is within "the zone of reasonable disagreement." *Salazar v. State*, 38 S.W.3d at 153–54. The excited utterance hearsay ex-

ception permits admission of a hearsay "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX.R. EVID. 803(2). "This exception is founded on the belief that statements made as a result of a startling event or condition are involuntary and do not allow the declarant an adequate opportunity to fabricate, thereby ensuring enough trustworthiness to fall outside the hearsay exception." *Couchman v. State*, 3 S.W.3d 155, 159 (Tex.App.-Fort Worth 1999, pet. ref'd). "It is not dispositive that the statement is an answer to a question or that it was separated by a period of time from the startling event; these are simply factors to consider in determining whether the statement is admissible under the excited utterance hearsay exception." *Salazar*, 38 S.W.3d at 154. "The critical determination is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition at the time of the statement." *Id.*

The startling occurrence that triggers an excited utterance need not necessarily be the crime itself. *Couchman v. State*, 3 S.W.3d at 159. For example, in *Hunt v. State*, 904 S.W.2d 813, 816–17 (Tex.App.-Fort Worth 1995, pet. ref'd), the Fort Worth court held that statements made by a victim to her mother three months after her assault were admissible because they were triggered by a news program about a rape victim. However, in *Mosley v. State*, 960 S.W.2d 200, 204 (Tex. App.-Corpus Christi 1997, no pet.), the statements made by a victim, who was sexually assaulted by her father, several days after the offense were held to be inadmissible as excited utterances even though they were made by the victim in an agitated state caused by her panic at having to return to visit her father. The

Corpus Christi court held that the "excitement" experienced by the declarant must be continuous between the event itself and the statement describing it. *Id.*

In this case, the statements were made nearly one year after the date of the most recent allegation. At that time, Smith was not still under the stress or excitement caused by the event, and the foundation for the exception, that the statement was made involuntarily without adequate opportunity to fabricate, does not exist. Therefore, the trial court abused its discretion in admitting the testimony.

Although the trial court erred in admitting the statements, the error only constitutes reversible error if it caused harm. It is well-established that the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence. *Couchman*, 3 S.W.3d at 160–161. However, in this case, the testimony of Smith's boyfriend and aunt was far more detailed than the testimony offered by Smith. Although the testimony of Smith's aunt and boyfriend was similar to that of Smith's treating psychologist and the nurse practitioner who examined her, the entire case turned on Smith's credibility, and the passage of time and circumstances under which Smith made her statements called her credibility into question. As previously noted, if the trial court had admitted Smith's prior sexual history, the nurse practitioner's testimony also would be suspect. Under these circumstances, it is highly likely that the testimony of Smith's aunt and boyfriend bolstering Smith's version of events affected Aguilera's substantial rights. *Williams v. State*, 531 S.W.2d 606, 612 (Tex.Crim.App. 1975).

Aguilera's second issue is sustained.

## LEGAL SUFFICIENCY

In his final point of error, Aguilera contends that the evidence was legally insufficient to convict him of count three, i.e. "did then and there intentionally and knowingly sexually assault [Smith] by causing his finger to penetrate the female sexual organ." In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Nurse Leal testified that Smith informed her that Aguilera would "put his penis in her vagina and his fingers." Nurse Leal further testified that based on the information she received, she concluded that there had been "digital penetration of [Smith's] vaginal area." Smith also testified that Aguilera would penetrate her "either with his fingers or with his penis." The evidence is sufficient.

Aguilera's ninth point of error is overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Although we do not expressly address Aguilera's contention that trial counsel was ineffective, we observe that the record contains several errors made by trial counsel, particularly with regard to the punishment election and trial counsel's failure to take certain actions to protect Aguilera's interests. In view of the sentence assessed against Aguilera, it would be difficult to conclude that Aguilera was not prejudiced by these errors. If these errors were to reoccur in the retrial of this cause, our confidence in the outcome of that proceeding would be undermined.

## CONCLUSION

The trial court's judgment is reversed, and the cause is remanded to the trial court for a new trial.