

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00051-CR

LEOPOLDO
HERNANDEZHERRERA

APPELLANT

V.

THE STATE OF TEXAS

STATE

----------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury found Appellant Leopoldo Hernandezherrera guilty of indecency with a child, and the trial court sentenced him to six years' confinement. Appellant raises two issues on appeal. In his first issue, he claims that the trial court erred by refusing to admit evidence concerning motives for the complainant to testify

---

[1]*See* Tex. R. App. P. 47.4.

falsely against him.  In his second issue, he argues that the evidence is legally and factually insufficient to support his conviction.  We will affirm.

Appellant became acquainted with the complainant, then fourteen-year-old K.G., when K.G.'s mother purchased a car from Appellant.  Appellant agreed to permit K.G.'s mother to pay for the car in installments, making a payment every few weeks.  Appellant retained a key to the car, indicating he would turn over the second key to K.G.'s mother when the car was paid off.  When Appellant went to K.G.'s home to pick up a car payment, he offered to perform an "egg cleansing" on K.G.  K.G.'s mother, who was home at the time, agreed.  K.G.'s mother gave Appellant an egg from the refrigerator, K.G. laid on her back, and Appellant moved the egg over K.G., three or four inches above her skin, without touching her.  As Appellant moved the egg, hovering over K.G.'s body, he prayed in Spanish.  Eventually, he cracked the egg into a glass of water and poured it down the drain.

Subsequently, K.G.'s mother borrowed from Appellant the extra car key that he had kept, and Appellant later came to K.G.'s home to retrieve it.  K.G. testified that when Appellant came to retrieve the key, he offered to again perform the "egg cleansing."  K.G.'s mother was at work, and K.G. was home alone with her brother.  K.G. agreed to permit Appellant to perform the ritual, but this time, according to K.G.'s testimony, Appellant assaulted her during the ritual by touching her breasts, putting his mouth on her breasts, and inserting his finger into her vagina while he held the egg and prayed in Spanish.  When Appellant

2

left, K.G. asked her brother to have their next-door neighbor come over; K.G. reported the incident to her neighbor.

Appellant was charged with sexual assault, indecency with a child by fondling, and indecency with a child by contact. The jury found Appellant not guilty of sexual assault, the trial court declared a mistrial on the fondling count, and the jury returned a verdict of guilty on the indecency with a child by contact (with K.G.'s breasts) count. The trial court sentenced Appellant to six years' confinement.

In his first issue, Appellant argues that the trial court "overapplied" the rape shield law to prevent him from introducing evidence at trial of K.G.'s possible bias, motive, or self-interest in violation of his rights under the Sixth and Fourteenth Amendments. Appellant claims that K.G. had a motive to lie about the charges against him because she was afraid of getting into trouble with her mother for letting Appellant enter the house while her mother was not home. In front of the jury, Appellant asked K.G.'s brother:

Q. Were y'all allowed to let people into the house when your mother wasn't home?

A. No, we were not allowed.

Q. Not allowed. Had your sister ever gotten in trouble for doing that?

The prosecutor objected, asked to approach the bench, and indicated that the testimony would concern some incidents with regard to K.G.'s letting some young

men into the house, incidents which involved sexual conduct, and pointed out "that is part of the State's motion in limine."

Outside the jury's presence, Appellant made the following bill:

Defense counsel: Guillermo, has your sister ever gotten into trouble for letting people in the house when she wasn't supposed to?

Guillermo: Yes.

Defense counsel: How did your mother react to that?

Guillermo: Bad.

Defense counsel: And when you say bad, did she get very angry?

Guillermo: Yes.

Defense counsel: Did they yell at each other?

Guillermo: I don't remember.

Defense counsel: Was your sister punished?

Guillermo: I don't remember.

Defense counsel: Have you ever gotten into trouble for letting people in the house when you weren't supposed to?

Guillermo: Yes, I think.

Defense counsel: Were you letting those people in for your sister or for you?

Guillermo: For me.

Defense counsel: And were you punished for that?

Guillermo: I don't remember.

4

Defense counsel: If your mother found out you were down playing at your friend's and lost the key, would you have been punished for that?

Guillermo: Yes.

Defense counsel: Were you worried about that that night?

Guillermo: A little.

Defense counsel: Did you tell [Appellant], ask him not to tell your mother you had lost the key that night?

Guillermo: No, I never told him that. I know she was going to find out anyway.

Defense counsel: So when he left, you were worried about getting in big trouble; is that right?

Guillermo: Yes.

Appellant claimed that this testimony showed that K.G.'s motive for lying about the charges against him was fear of her mother's wrath for having allowed Appellant to enter their home during her mother's absence.

Appellant also claims that the trial court erred by not allowing him to cross-examine K.G. in front of the jury about the family's financial troubles; the fact that K.G.'s stepfather went to prison for sexually abusing K.G.; the fact that, according to Appellant, K.G.'s mother blamed K.G. for the family's financial situation; and the fact that K.G. feared Appellant was coming to repossess the car and would leave the family without a vehicle again. K.G. testified outside the presence of the jury, however, that her mother did not blame her for the family's financial situation; instead, her mother was angry that she had not spoken up

5

sooner about the sexual abuse she had been suffering. K.G. likewise testified outside the presence of the jury that she knew Appellant was coming to retrieve the car key and never thought that he was there to repossess the car. The trial court ruled that K.G.'s past situation with her stepfather was not admissible because it did not show any motive for K.G. to lie about what Appellant had done. The trial court indicated that the family's financial situation and their need for a car was already before the jury and that Appellant could cross-examine K.G. on that topic.

We review evidentiary rulings under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App.), *cert. denied*, 534 U.S. 855 (2001); *Aguilera v. State*, 75 S.W.3d 60, 64 (Tex. App.—San Antonio 2002, pet. ref'd). The trial court abuses its discretion when it acts "without reference to any guiding rules and principles, or acts in a manner that is arbitrary or capricious." *Lam v. State*, 25 S.W.3d 233, 236–37 (Tex. App.—San Antonio 2000, no pet.) (citing *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1990) (op. on reh'g)). A trial court does not abuse its discretion if its ruling is at least within "the zone of reasonable disagreement." *Salazar*, 38 S.W.3d at 153–54.

An accused is given great latitude in showing any fact that would tend to establish ill feeling, bias, or motive for fabrication on the part of any witness testifying against the accused. *Richardson v. State*, 744 S.W.2d 65, 79 (Tex. Crim. App. 1987), *vacated and remanded*, 492 U.S. 914 (1989). The United

6

States Constitution is offended by any state evidentiary rule that prohibits a defendant from cross-examining a witness concerning possible motives, bias, and prejudice to such an extent that he could not present a vital defensive theory. *Hammer v. State*, 296 S.W.3d 555, 562–63 (Tex. Crim. App. 2009).

To the extent the trial court ruled that Appellant could not question K.G.'s brother about his concerns that he and K.G. would get into big trouble for letting Appellant into the house on the night of the offense, we hold that the trial court's ruling was within the zone of reasonable disagreement. The fact that K.G. and her brother might get into trouble with their mother for allowing Appellant into the house would not seem to provide K.G. a motive to make false accusations against Appellant; as pointed out by the State, if anything, the excluded testimony would seem to give K.G. a motive to not make any accusations against Appellant at all in order to avoid disclosing that Appellant had been in the home. Nor does the excluded testimony of K.G.'s brother seem to touch on any bias, ill-feelings, or prejudice by K.G. toward Appellant. *Cf. id.* at 567–68 (holding that trial court abused its discretion by excluding evidence of victim's anger at her father, the defendant, for requiring her to undergo a sexual assault examination at the hospital after she ran away from home with several boys and stayed out overnight and by excluding evidence that she told the sexual assault nurse that one of the boys had sexually assaulted her but told a family friend that she had made that up because she had really had sex with her boyfriend whom the defendant had strict rules about her seeing); *Billodeau v. State*, 277 S.W.3d 34,

7

37–38, 43 (Tex. Crim. App. 2009) (holding that trial court abused its discretion by excluding evidence that child had, on two other occasions when he became angry with adults, accused them of molestation in case where child became angry with defendant and defendant's theory was child also falsely accused him of molestation).

We likewise hold that the trial court did not abuse its discretion by not permitting Appellant to cross-examine K.G. in front of the jury about the fact that K.G.'s stepfather went to prison for sexually abusing K.G.; the fact that, according to Appellant, K.G.'s mother blamed K.G. for the family's financial situation; and the fact that K.G. feared Appellant was coming to repossess the car and leave the family without a vehicle again. Two of Appellant's contentions are inaccurate: K.G. testified outside the presence of the jury that her mother did not blame her for the family's financial situation and that she did not think Appellant was coming to repossess the car. Therefore, because K.G. testified contrary to Appellant's belief as to these facts, the trial court did not abuse its discretion by not permitting Appellant to cross-examine K.G. in front of the jury about these topics. The trial court indicated that the family's financial situation and their need for a car was already before the jury and that Appellant could cross-examine K.G. on that topic. Thus, Appellant possesses no valid complaint that such testimony was excluded. Finally, the trial court ruled that K.G.'s past situation with the stepfather was not admissible because it did not show any motive for K.G. to lie about what Appellant had done. The trial court did not

abuse its discretion in this ruling. *See, e.g., Woods v. State*, 301 S.W.3d 327, 334 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that trial court did not abuse its discretion in sexual assault trial by excluding evidence of prior sexual assault victim had suffered by different perpetrator). We overrule Appellant's first issue.

In his second issue, Appellant claims that the evidence is legally and factually insufficient to support his conviction. The court of criminal appeals has held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 895, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)). Thus, the *Jackson* standard, which is explained below, is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Id.* at 912. Accordingly, despite Appellant's assertions in his brief to the contrary, a separate challenge to the factual sufficiency of the evidence is no longer viable.

We therefore review Appellant's sufficiency challenge under the sufficiency standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt. *Id.*; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

A person commits the offense of indecency with a child if the person engages in sexual contact with a child younger than seventeen years of age. *See* Tex. Penal Code Ann. § 21.11(a)(1) (West 2011). Sexual contact means touching by a person, including touching through the clothing, of the anus, breast, or genitals of the child with the intent to arouse or gratify the sexual desire of any person. *Id.* § 21.11(c). The specific intent required for the offense of indecency with a child may be inferred from a defendant's conduct, his remarks, and all of the surrounding circumstances. *See Connell v. State*, 233 S.W.3d 460, 467 (Tex. App.—Fort Worth 2007, no pet.).

Here, Appellant claims that because he was performing the "egg cleansing," when he allegedly touched K.G. and K.G. so testified, there is no evidence that he acted with the intent to gratify or arouse the sexual desire of an individual. But the evidence established that the sexual contact that K.G. testified had occurred during the second "egg cleansing" had not occurred during the first "egg cleansing" that Appellant had performed in K.G.'s mother's presence. The jury could have determined that Appellant's conduct in touching K.G.'s breast both under and on top of her clothing and by placing his mouth on her breast during the second "egg cleansing" was not part of the "egg cleansing" because it did not occur during the first "egg cleansing" and could have rationally inferred from Appellant's conduct and from the surrounding circumstances,

10

including that K.G.'s mother was not home during the second "egg cleansing," that Appellant did act with the intent to gratify or arouse the sexual desire of an individual.  Viewing all of the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 899.  We overrule Appellant's second issue.

Having overruled both of Appellant's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL:  WALKER, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 15, 2012

11