**Octavio MARTINEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–03–00746–CR.**

Court of Appeals of Texas,
San Antonio.

Nov. 24, 2004.

Jennifer S. Nisbet, San Antonio, for appellant.

Scott Roberts, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

A jury found appellant, Octavio Martinez, guilty of driving while intoxicated. The trial court assessed punishment at one hundred and twenty days confinement, probated for one year, and fined Martinez seven hundred dollars. Martinez raises two issues in this appeal. He contends the prosecuting attorney failed to read the information in compliance with Article 36.01(a)(1) of the Texas Code of Criminal Procedure, thus committing reversible error. In addition, he claims the trial court erred in admitting retrograde extrapolation testimony of an intoxilyzer test administered sixty-two minutes after the stop, and that the intoxilyzer results were more prejudicial than probative. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 11, 2002, Officer Albert Byrom of the San Antonio Police Department pulled Octavio Martinez over after he observed Martinez speed out of an alley, narrowly miss hitting a fence, fail to stop at a stop sign, and fail to put on his blinker. When Martinez stepped out of

his vehicle, he almost fell, could not stand or walk without holding onto his vehicle for support, and appeared unsteady on his feet. Officer Byrom noticed that Martinez had red, bloodshot eyes, slurred speech, and smelled of alcohol. Based on his observations, Officer Byrom called for back-up to assist in administering a field sobriety test. Martinez was placed in handcuffs and continued to lean against his vehicle for support. He admitted he drank one beer approximately forty minutes before the stop. Officer Kevin Nogle arrived at the scene minutes later and performed two field sobriety tests, the vertical gaze nystagmus test and the horizontal gaze nystagmus (HGN) test. Martinez exhibited all six clues under the HGN and tested positive for vertical nystagmus. The officers testified that they did not conduct any other field sobriety tests because Martinez's wife was screaming at him from the front yard, agitating Martinez and making it difficult to perform further tests. Officer Byrom placed Martinez under arrest for DWI and transported him downtown.

At the San Antonio magistrate court, Martinez consented to an intoxilyzer test. The test was conducted at 6:44 p.m., sixty-two minutes after the stop, and reflected Martinez had a blood alcohol content (BAC) of 0.273. Martinez gave a second breath sample two minutes later, at 6:46 p.m., and had a BAC of 0.277.[1] Martinez was charged by information with driving while intoxicated under both definitions of the term; that is, he did not have normal use of mental and physical faculties due to the consumption of alcohol ("impairment theory" of intoxication), and his alcohol concentration was 0.08 or more ("per se" theory of intoxication). The jury charge included an instruction on impairment theory only.

Martinez filed a motion to suppress the results of his intoxilyzer breath tests along with any accompanying testimony. At the pre-trial suppression hearing, Martinez testified that he weighed 175–180 pounds on the date of the test (which is also noted in the police report), had not eaten since 8:00 p.m. the evening before his arrest, and had slept eight hours the night before. He testified he drank one Lone Star beer the day of the stop, which he consumed around 5:00 p.m. The trial court overruled the motion to suppress with respect to admission of the breath test results, but ruled that no quantification of the breath test results would be admissible.

Based on the personal information Martinez provided at the suppression hearing, the State sought to introduce retrograde extrapolation testimony at trial. The court re-opened Martinez's motion to suppress, and Martinez objected on the basis the trial court had already ruled on the motion. The State responded that Martinez had provided enough information at the suppression hearing for the State to present extrapolation testimony in compliance with *Mata v. State*, 46 S.W.3d 902 (Tex. Crim.App.2001). A hearing was conducted outside the presence of the jury in which the trial court determined that sufficient *Mata* factors were present to provide a sufficient basis for the expert's opinion. The trial judge reasoned that the intoxilyzer results were thus relevant and admissible.

### ARTICLE 36.01(A)(1) ANALYSIS

In his first issue, Martinez contends the prosecuting attorney committed reversible error by failing to read the information to the jury in compliance with

---

1. The two breath samples constitute a single intoxilyzer test. Each intoxilyzer test requires two breath samples to ensure the accuracy of the reading.

Article 36.01(a)(1) of the Texas Code of Criminal Procedure. Under Article 36.01(a)(1), the prosecutor must read the indictment or information to the jury. TEX.CODE CRIM. PRO. ANN. art. 36.01(a)(1) (Vernon Supp.2004–2005). The reading of the information is mandatory. *Warren v. State*, 693 S.W.2d 414, 415 (Tex.Crim.App. 1985). The rationale for the rule is to inform the accused of the charges against him, to inform the jury of the charge at issue, and to allow the jury to hear the defendant refute or admit the charge. *Id.* Without the reading of the indictment and the entering of a plea, no issue is joined upon which to try. *Id.*

■ The record shows that the prosecutor read the information to the jury, but omitted the loss of use and per se definitions of intoxication. Martinez responded by entering a plea of not guilty. He did not object to the prosecutor's reading of the information at that time. Martinez did not raise the issue of failure to read the entire information until the next day, prior to the testimony of the State's last witness, and did not receive an adverse ruling from the trial court. As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint. TEX.R.APP. P. 33.1(a). A defendant has an obligation to lodge a timely objection to afford the trial court the opportunity to cure the defect. *Id.* Because Martinez did not timely object to the prosecutor's reading of the information and filed no post-trial motions, Martinez has failed to properly preserve this complaint for our review. *See id.; Warren*, 693 S.W.2d at 416 (stating that the proper post-trial methods to pre-serve error when the trial court's failure to read enhancement paragraphs in compliance with Article 36.01(a)(1) is discovered after trial are a motion for new trial, a bill of exception, or a motion to arrest the judgment). Martinez's first issue is overruled.

## RETROGRADE EXTRAPOLATION TESTIMONY

■ Martinez first argues that it was error for the trial court to reconsider its prior ruling on the motion to suppress regarding breath test results and retrograde extrapolation evidence. This court has previously recognized that "a ruling on a motion to suppress is an interlocutory decision that may be reconsidered by the trial judge." *State v. Henry*, 25 S.W.3d 260, 262 (Tex.App.-San Antonio 2000, no pet.). Therefore, we overrule this argument and consider whether the trial court abused its discretion by modifying its previous ruling on the motion to suppress.

■ Martinez contends that the testimony of the State's witness, Bexar County breath test technical supervisor George Allan McDougall, was irrelevant and unreliable. Even if we assume the trial court erred in admitting retrograde extrapolation evidence, the record does not reveal harmful error. The erroneous admission of retrograde extrapolation testimony is considered non-constitutional error. *Bagheri v. State*, 119 S.W.3d 755, 762–63 (Tex.Crim.App.2003). Therefore, we must disregard any such error unless it affected Martinez's substantial rights. TEX.R.APP. P. 44.2(b). An appellate court may not reverse for nonconstitutional error if the court, "after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex.Crim.App.2001). We must consider the entire record, including

testimony evidence, voir dire, closing arguments and jury instructions to determine whether the jury was affected. *Bagheri*, 119 S.W.3d at 763; *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex.Crim.App.2002). We should also consider the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, whether the State emphasized the error, whether the erroneously admitted evidence was cumulative, and whether it was elicited from an expert. *Bagheri*, 119 S.W.3d at 763.

Our examination of the entire record leads to the conclusion the error, if any, was harmless. Retrograde extrapolation was never mentioned during voir dire. The State informed the jurors during voir dire that "to be legally intoxicated means that a defendant did not have the normal use of his mental faculties by the reason of the introduction of alcohol into his body, or did not have the normal use of his physical faculties." The jurors were asked what they considered evidence of intoxication, and their responses included slurred speech, reckless driving, difficulty making decisions, staggering and loss of balance, strong odor of alcohol, not being able to stand or walk, and having a carefree attitude. The prosecutor mentioned during voir dire that there would be "breathalyzer test" evidence, but none of the jurors indicated they would give special weight to such evidence. *Cf. Bagheri*, 119 S.W.3d at 764.

During his opening statement, the prosecutor recited a list of evidence he said would prove Martinez was guilty of driving while intoxicated, but this list did not include references to retrograde extrapolation testimony. The State explained that the testimony of its three witnesses would prove Martinez's impairment. McDougall's retrograde extrapolation testimony was not mentioned until closing arguments. The State referred to Martinez's breath test results as evidence he had consumed more alcohol than he admitted. McDougall's retrograde extrapolation testimony was referred to as evidence that Martinez had lost his mental and physical faculties. On the record as a whole, we do not find that retrograde extrapolation testimony was emphasized.

Importantly, McDougall's testimony was cumulative because there was other significant evidence that Martinez was impaired. Unlike the situation in *Bagheri*, we know which theory the jury relied on in assessing their verdict. The jury charge included an instruction that intoxication "means not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body." To prove impairment, the State generally relies on eyewitness testimony and field sobriety tests. *See State v. Mechler*, 123 S.W.3d 449, 455 (Tex.App.-Houston [14th Dist.] 2003, pet. granted June 9, 2003). There was testimony from Officer Byrom that Martinez sped out of an alley and nearly hit a fence. Martinez nearly fell getting out of his vehicle and could not stand or walk without clutching the vehicle for support. All three police officers who had observed Martinez testified he exhibited several symptoms of impairment. The officers testified that Martinez appeared disoriented, slurred his speech, had bloodshot eyes, staggered, and swayed. Officer Byrom testified that Martinez "bamblasted" him with the smell of alcohol. Further, it is uncontested that Martinez failed two field sobriety tests. Field sobriety tests are a reflection of the degree to which the defendant's normal mental and physical faculties are impaired from the introduction of intoxicants into the system and constitute circumstantial evidence the defendant is impaired. *See Emerson v. State*, 880 S.W.2d 759, 769 (Tex.Crim.App.

1994) (recognizing that the HGN test is a reliable indicator of impairment). Officer Nogle testified that Martinez exhibited all six clues on the HGN and also had vertical nystagmus, which indicated he had drank excessively.

Martinez's main defensive theory was to deny he exhibited any signs of impairment. He admitted that his breath smelt like alcohol because he had consumed alcohol at 5:00 p.m. He said he has a skin condition that makes his face red. He denied speeding out of the alley, nearly hitting a fence, or committing any traffic infractions. Martinez also denied ever being unsteady on his feet, leaning on his van for support, slurring his speech, staggering or swaying. He said the police were lying. The jury was free to assess the credibility of the witnesses in determining whether Martinez was legally intoxicated.

Given the State's slight emphasis of the retrograde extrapolation testimony, the relative weakness of Martinez's defensive theories, and the strength of the State's case, we can say with fair assurance that the admission of the retrograde extrapolation testimony had, at most, a slight effect. We therefore conclude the error, if any, should be disregarded.

## Relevance of Intoxilyzer Breath Test Results and Rule 403 Analysis

■■■ We turn now to the intoxilyzer results. Martinez urges that the intoxilyzer results were irrelevant and constituted no evidence under *Stewart v. State*, 103 S.W.3d 483 (Tex.App.-San Antonio 2003), *rev'd* 129 S.W.3d 93 (Tex.Crim.App.2004). We held in *Stewart* that breath test results are unreliable and constitute no evidence without reliable retrograde extrapolation testimony. *Id.* at 486. The Texas Court of Criminal Appeals held, however, that evidence of breath test results is both probative and admissible even in the absence

of retrograde extrapolation testimony. *Stewart v. State*, 129 S.W.3d 93, 97 (Tex. Crim.App.2004) ("the breath test results were pieces in the evidentiary puzzle for the jury to consider in determining whether Stewart was intoxicated at the time she drove."). We hold that the breath test results were relevant and properly admitted evidence to consider with the State's other evidence of Martinez's impairment. *See id.*

■■■ Martinez argues that even if the intoxilyzer results are relevant, the evidence should have been excluded under Rule 403 of the Texas Rules of Evidence. All evidence is admissible under Rule 403 unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex.R. Evid. 403. Rule 403 carries with it a presumption that relevant evidence is more probative than prejudicial. *Hayes v. State*, 85 S.W.3d 809, 815 (Tex.Crim.App.2002); *Jones v. State*, 944 S.W.2d 642, 652 (Tex.Crim.App.1996). In order to exclude relevant evidence, we look for a "clear disparity between the degree of prejudice of the offered evidence and its probative value." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex.Crim.App.1999). We consider several factors when determining whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice, including: 1) the evidence's inherent probative value; 2) the potential the evidence has to impress the jury in some irrational but nevertheless indelible way; 3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and 4) the force of the proponent's need for this evidence to prove a fact of consequence. *Manning v.State*, 114 S.W.3d

922, 926 (Tex.Crim.App.2003); *Mozon,* 991 S.W.2d at 847. The trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard, and we will not intercede unless the trial court's ruling falls outside the zone of reasonable disagreement. *Weatherred* v. State, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000); *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990).

Martinez's argument that admission of his intoxilyzer results was more prejudicial than probative is unpersuasive. First, the intoxilyzer test results were probative of whether Martinez consumed alcohol before operating a motor vehicle and whether he was impaired as a result of his alcohol consumption. *See Stewart,* 129 S.W.3d at 96 (holding that intoxilyzer test results are probative evidence of intoxication under either theory); *Verbois v. State,* 909 S.W.2d 140, 141–42 (Tex.App.-Houston [14th Dist.] 1995, no pet.) (holding that intoxilyzer results are probative as to whether an individual has consumed alcohol). Second, the intoxilyzer test results would not have impressed the jury in some irrational but indelible way. The jury was instructed that to convict Martinez, they needed to find he was intoxicated as a result of the introduction of alcohol into his body, and that as a result of the alcohol consumption he had lost his mental and physical faculties at the time he drove. The intoxilyzer results tended to prove Martinez had consumed more alcohol than he admitted, thus going to the charged offense. *See Manning,* 114 S.W.3d at 928 (holding that evidence is not "unfairly prejudicial" under a Rule 403 balancing test when it specifically pertains to an allegation in the indictment). Third, because the intoxilyzer results were proof of the charged offense, the amount of time the State spent developing the evidence is inconsequential since it could not have distracted the jury from the charged offense.

Fourth, we consider whether the State needed the evidence to prove Martinez's intoxication. As discussed previously, the State had other evidence Martinez was impaired as a result of alcohol consumption: the three officers' eyewitness testimony that Martinez exhibited symptoms of impairment and smelled of alcohol; the field sobriety tests; and Martinez's own admission that he had consumed alcohol. Although the intoxilyzer results tended to show Martinez had consumed more alcohol than he admitted, we do not find the State's need for the evidence was great in view of the other evidence the State had to establish Martinez's intoxication. Nonetheless, balancing the aforementioned factors, we find that there is not a clear disparity between the degree of prejudice of Martinez's intoxilyzer results and their probative value. Martinez's second issue is overruled.

### CONCLUSION

Based on the foregoing discussion, we affirm the trial court's judgment.