MEMORANDUM OPINION

No. 04-05-00622-CR

Antonio AGUILERA, Jr. ,

Appellant

v.

The STATE of Texas ,

Appellee

From the 341st Judicial District Court, Webb County, Texas

Trial Court No. 1999-CRS-102-D3

Honorable Fred Shannon , Judge Presiding




Opinion by: Phylis J. Speedlin , Justice



Sitting: Sandee Bryan Marion , Justice

 Phylis J. Speedlin , Justice

 Rebecca Simmons , Justice



Delivered and Filed: January 19, 2007



AFFIRMED

 Antonio Aguilera, Jr., appeals his conviction of three counts of indecency with a child and three counts of aggravated
sexual assault and resulting sentence of 65 years imprisonment. Based on the following reasons, we affirm the trial court's judgment.





Background and Procedural History

 This appeal stems from Aguilera's second trial following our reversal of his first conviction.See Aguilera v. State, 75
S.W.3d 60 (Tex. App.--San Antonio 2002, pet. ref'd). We briefly restate the underlying facts of the case from our prior
opinion. On January 1, 1999, the complainant, Amber Smith (a pseudonym), told her boyfriend that her stepfather,
Aguilera, had been sexually abusing her for several years. Id. at 63. At the time, Amber was living with her grandmother,
but was scheduled to move back in with her mother, who had reunited with Aguilera. Id. At her boyfriend's insistence,
Amber told her aunt of the sexual abuse. The police investigated and Aguilera was indicted on several counts of indecency
with a child and aggravated sexual assault. Id. In his first trial, a jury found Aguilera guilty of three counts of indecency
with a child and three counts of aggravated sexual assault, and assessed punishment at 99 years and life imprisonment on
the various counts, plus a $5,000 fine. On appeal, we reversed his conviction based on the erroneous admission of hearsay
and certain opinion testimony by the State's expert, Dr. Gregorio Pina, a psychologist. Id. at 63. Aguilera was tried a second
time, and was again convicted by a jury of three counts each of indecency with a child and aggravated sexual assault. His
punishment was assessed at 65 years imprisonment, with no fine. In his second appeal, Aguilera again raises issues related
to the admission of Dr. Pina's expert testimony and amendment of the indictment. 

Expert Testimony

 Denial of Voir Dire Examination of Expert. 

 In his first issue, Aguilera asserts the trial court committed reversible error by denying his request under Rule 705(b) to voir
dire Dr. Pina before his expert testimony was presented to the jury. See Tex. R. Evid. 705(b). Upon a timely request, a
criminal defendant against whom expert testimony is offered is entitled to conduct a voir dire examination outside the jury's
presence; the scope of the voir dire is limited to "the underlying facts and data upon which the opinion is based." Tex. R.
Evid. 705(b); Alba v. State, 905 S.W.2d 581, 587-88 (Tex. Crim. App. 1995). Because Rule 705(b) is mandatory in a
criminal case, the trial court errs if it denies a defendant's timely request for a Rule 705(b) hearing. Alba, 905 S.W.2d at
588; Harris v. State, 133 S.W.3d 760, 773 (Tex. App.--Texarkana 2004, pet. ref'd). When such a request is erroneously
denied, the reviewing court must then determine whether the error was "so harmful as to require reversal." Alba, 905
S.W.2d at 588.

 Assuming without deciding that Aguilera was entitled to the requested voir dire hearing, we conclude the denial of the
hearing was harmless. See Alba, 905 S.W.2d at 588. This was the second time Dr. Pina had testified against Aguilera on
the same allegations, and Dr. Pina based his opinion on the same underlying facts and data that made his testimony
admissible during the first trial, i.e., his review of Amber's prior statements to investigators, friends and family about the
abuse; his personal interviews with and observations of Amber; her family history; the symptoms she exhibited; and her
response to a treatment plan tailored to sexually abused children. The record reflects that Aguilera's counsel was provided
with Dr. Pina's notes from his sessions with Amber, including the eighteen sessions before the first trial and the six sessions
before the second trial. Therefore, there was no harm in not allowing Aguilera to voir dire Dr. Pina to "discover" matters
which he already knew. See Alba, 905 S.W.2d at 588 n.10 (prosecutor's hypothetical question during trial incorporated the
facts and data underlying expert's opinion); see also Jenkins v. State, 912 S.W.2d 793, 814 (Tex. Crim. App. 1993) (any
error in denying voir dire of expert was harmless where defendant knew underlying facts, and had copies of psychologist's
evaluations, which formed basis of his opinion). Aguilera's first issue is overruled. 

 Reliability of the Expert Testimony.

 In his second issue, Aguilera contends the court abused its discretion in admitting Dr. Pina's testimony because it was
unreliable in that his methodology failed to properly rely on or utilize the principles involved in the field of child
psychology. See Nenno v. State, 970 S.W.2d 549, 560 (Tex. Crim. App. 1998), overruled on other grounds, State v.
Terrazas, 4 S.W.3d 720 (Tex. Crim. App. 1999). Specifically, Aguilera argues Dr. Pina's methodology was unreliable
because he did not employ any standardized psychological tests in his evaluation and diagnosis of Amber. We review the
trial court's decision to admit or exclude expert testimony for an abuse of discretion. Weatherred v. State, 15 S.W.3d 540,
542 (Tex. Crim. App. 2000). We will uphold the trial court's ruling if it was within the zone of reasonable disagreement. 
Id.; Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

 Under Rule 702, the proponent of "scientific, technical or other specialized knowledge" has the burden of proving by clear
and convincing proof that the evidence is sufficiently relevant and reliable to assist the jury in understanding other evidence
or in determining a fact in issue. Tex. R. Evid. 702; Weatherred, 15 S.W.3d at 542; Kelly v. State, 824 S.W.2d 568, 572-73
(Tex. Crim. App. 1992). The expert testimony must meet the test for scientific reliability and must reflect information
outside the general knowledge of lay persons. Schutz v. State, 957 S.W.2d 52, 70 (Tex. Crim. App. 1997). The reliability
of "soft" science evidence, such as psychological evidence, may be established by showing that (1) the field of expertise
involved is a legitimate one, (2) the subject matter of the expert's testimony is within the scope of that field, and (3) the
expert's testimony properly relies on or utilizes the principles involved in that field. Weatherred, 15 S.W.3d at 542 (citing
Nenno, 970 S.W.2d at 561). Once a particular type of scientific evidence is well established as reliable, a court may take
judicial notice of that fact, relieving the proponent of the burden of producing evidence on that issue. Weatherred, 15
S.W.3d at 542 n. 4. 

 Here, Aguilera only challenges Dr. Pina's testimony for failing to meet the third part of theNenno test - proper reliance on
or utilization of the principles involved in the field of child sexual abuse psychology - because Dr. Pina did not use any of
the various standardized psychological tests that were available. Dr. Pina readily admitted at trial that he had not used any
of the standardized tests, scales and profiles mentioned by defense counsel in his evaluation of Amber. (1) Dr. Pina
explained that standardized psychological tests are not part of his methodology in evaluating children that have allegedly
been sexually abused. His standard methodology consists of taking a detailed family history, interviewing and evaluating
the child and her symptoms, comparing the child's symptoms to those exhibited by sexually abused children, and combining
his observations with his 30 years of experience and training to reach a conclusion and diagnosis, followed by
implementation of a treatment plan. He testified that he applies this procedure in every case of alleged child sexual abuse,
and that the procedure is accepted in his professional field. Dr. Pina further stated that he does not use standardized
psychological tests, which he admitted are available, because, in his opinion, they are not helpful in the area of child sexual
abuse. He explained that whether a child has been sexually abused cannot be "measured" like intelligence, and that there is
no "gold standard" test that determines whether a child has been sexually abused; rather, application of standardized tests in
the area of child sexual abuse results in a "50/50 toss." Dr. Pina agreed that some psychologists do choose to use
standardized tests when dealing with sexually abused children. 

 The fact that another psychologist may have chosen to use one or more standardized tests in evaluating Amber goes to the
weight, not the admissibility, of Dr. Pina's testimony; in other words, it does not make his scientifically accepted
methodology unreliable. See Zone v. State, 118 S.W.3d 776, 777 (Tex. Crim. App. 2003) (defendant's attack on expert's use
of scientifically accepted method of "sampling" or randomly testing portions of seized cocaine, rather than the whole, went
to the weight of the expert evidence, not its admissibility). We conclude the trial court did not abuse its discretion in
finding Dr. Pina's testimony to be sufficiently reliable and admissible under Rule 702, Nenno and Weatherred. We overrule
Aguilera's second issue.

 Did Dr. Pina's Testimony Constitute an Opinion on Amber's Credibility?

 In his third issue, Aguilera contends that "the fatal error that infected the first trial repeated itself in the second trial"
because Dr. Pina's testimony again amounted to an opinion that Amber was being truthful, which is prohibited by Rule 702. 
See Aguilera, 75 S.W.3d at 65-66 (an expert is not permitted under Rule 702 to give an opinion that the complainant or a
class of persons to which the complainant belongs is truthful) (citing Yount v. State, 872 S.W.2d 706, 712 (Tex. Crim. App.
1993)). We will not disturb a trial court's decision to admit expert testimony absent an abuse of discretion. Weatherred, 15
S.W.3d at 542.

 Expert testimony must aid, not supplant, the jury's fact-finding role, and expert testimony that constitutes a direct opinion
on the truthfulness of a witness does not assist the jury, and is thus inadmissible. Schutz, 957 S.W.2d at 70; Yount, 872
S.W.2d at 708. In the first trial, Dr. Pina testified that ten percent of children who allege sexual abuse are lying, there are
tools to identify the ten percent who are malingering or lying, and he found Amber's story to be consistent over time. See
Aguilera, 75 S.W.3d at 65. We held that Dr. Pina's testimony amounted to an opinion that Amber, or the class to which she
belonged, was truthful, and the testimony was therefore inadmissible. Id. at 65-66 (also finding the error harmful). In his
brief, Aguilera challenges Dr. Pina's testimony at the second trial concerning Amber's symptoms being consistent with those
of sexually abused children, his team's attempts to find flaws in her story, and his attempts to provide fake symptoms to see
if she caught on, asserting that such testimony again crossed the line and amounted to an opinion that Dr. Pina believed that
Amber was truthful. (2) 

 First, with respect to Amber's symptoms, Dr. Pina testified on direct examination that "she exhibited symptoms ... that were
consistent with other children of the same age, same background, who claimed that they were sexually abused and were
found to have been such by proceedings such as this one or other methods also." He then discussed the particular symptoms
he observed in Amber, citing her hyper-vigilance, self-isolation, exhibition of a startled response when interrupted, signs of
depression, sleep disturbances, headaches, separation anxiety and advanced sexual knowledge and preoccupation, as the
symptoms that were consistent with those of sexually abused children. It is well established that an expert witness may
testify that a child exhibits symptoms consistent with sexual abuse, but may not testify that the child is truthful. See Duckett
v. State, 797 S.W.2d 906, 916-17 (Tex. Crim. App. 1990) (holding expert is permitted to explain common reactions and
behaviors of children who have been abused, and testify as to whether the child complainant's reactions are consistent with
those behaviors), overruled on other grounds, Cohn v. State, 849 S.W.2d 817, 818-19 (Tex. Crim. App. 1993) (holding that
expert testimony regarding behavioral characteristics typically exhibited by sexually abused children, and describing
particular complainants' behavior, was admissible substantive evidence even though complainants' credibility had not been
impeached, disapproving Duckett to that extent). "While an expert may not testify that a person's recitation of events is or is
not the product of fantasy or manipulation because such evidence is, in effect, particularized testimony concerning the
person's credibility, ... an expert may, nevertheless, testify about both the common traits/symptoms of child sexual abuse
syndrome and whether the victim exhibits these traits." Oliver v. State, 32 S.W.3d 300, 303 (Tex. App.--San Antonio 2000,
pet. ref'd) (citing Schutz, 957 S.W.2d at 69) (holding that expert testimony that complainant's allegations are result of
manipulation or fantasy constitutes impermissible comment on person's credibility). Merely because expert testimony tends
to make it more or less likely that another witness is telling the truth does not necessarily make it inadmissible. Duckett,
797 S.W.2d at 914. "[E]vidence that corroborates another witness' story or enhances inferences to be drawn from another
source of evidence, in the sense that it has an incrementally further tendency to establish a fact of consequence, should not
be considered 'bolstering.'" Cohn, 849 S.W.2d at 820. We conclude that Dr. Pina's testimony that Amber's symptoms were
consistent with those of children who had been sexually abused was not an opinion that she was credible, and was
admissible. See Oliver, 32 S.W.3d at 303; see also Fox v. State, 175 S.W.3d 475, 482 (Tex. App. --Texarkana 2005, pet.
ref'd).

 We next address whether Dr. Pina's other testimony crossed the line and constituted direct testimony on Amber's
truthfulness. See Oliver, 32 S.W.3d at 303 (expert may not testify that a person's story is or is not the product of fantasy or
manipulation); Fox, 175 S.W.3d at 482 (witness may not "cross the line" and testify directly as to victim's truthfulness). 
Aguilera challenges Dr. Pina's testimony during a later portion of direct examination in which the prosecutor asked, "Did
you perform any tests to determine the consistency of her story?" Dr. Pina replied, "... What I did is that I took a look at,
and I could call it essentially testing, what she had said before to her boyfriend, to her aunt - on the videotape that was done
before I saw her, that I did not see. I saw her blind, and then what she told me, and then kept up across time, also the police
investigator and those reports, reviewed them, and I saw the consistency across symptoms." The prosecutor then asked, "I
think you've said that you saw consistency across time?" Dr. Pina responded, "So, we're taking a look at the issue of
consistency, the consistency of the symptoms and how these symptoms reacted to known treatments where we know what's
going to happen if someone claims a specific symptom and then you apply the treatment and you see if the person gets
better or not. You also provide fake symptoms at times to see if a person catches onto that." Finally, in explaining the
approach of the multidisciplinary team to which he belongs, Dr. Pina further stated, "The multidisciplinary team also takes
on a different function, which is, to disagree purposefully to find flaws or to find problems with a particular case ... ." Dr.
Pina did not state whether Amber did or did not exhibit fake symptoms, and did not state that his team could find no flaws
in her story.

 Whether a particular child is lying, fantasizing or being manipulated is a matter within the knowledge of lay persons, and
expert testimony on the issue is thus inadmissible. Schutz, 957 S.W.2d at 70-71. However, a party may attack the
credibility of a witness by offering the following kinds of manipulation evidence: "(a) evidence that the person is, in
general, the kind of person who is easily manipulated, (b) common signs or symptoms of manipulation and evidence that
the person displays some or all of these signs or symptoms, and (c) evidence of third person acts or words designed to
manipulate." Schutz, 957 S.W.2d at 70. Expert testimony that a complainant does not exhibit the traits of manipulation
does not constitute a direct comment on the complainant's truthfulness, and is thus admissible. Id. at 73 (but also holding
that expert testimony that complainant did not exhibit any traits of fantasizing did constitute an impermissible comment on
truthfulness where expert did not describe any "traits" of fantasizing and merely equated it with lying). Here, Dr. Pina was
describing the general approach of his team in verifying the truthfulness of a child's allegations by providing fake symptoms
to check the reaction and by disagreeing to find flaws in the story. He did not express an opinion as to whether Amber
"caught on" to the fake symptoms, and did not state whether or not his team found any flaws in Amber's story. Dr. Pina did
not express an opinion on whether Amber had in fact been manipulated or whether her allegations were the result of
fantasy. Cf., Schutz, 957 S.W.2d at 73. The fact that the jury could draw an inference from Dr. Pina's testimony that Amber
was being truthful does not make his testimony inadmissible as a direct comment on her credibility. See Cohn, 849 S.W.2d
at 820. We conclude that Dr. Pina's testimony did not cross the line between assisting the jury and attempting to replace the
jury as trier of fact with respect to Amber's credibility. Aguilera's third issue is overruled.

Amended Indictment

 In his fourth issue, Aguilera asserts that the amendment to the indictment was not effective and thus, reversal is required. 
Prior to Aguilera's first trial, the trial court granted the State's motion to amend the indictment to insert the omitted phrase
"with the intent to arouse and gratify his own sexual desire" into the three counts alleging indecency with a child. The
court's order signed March 20, 2000 restated the language of the original indictment with the addition of the omitted phrase
in the indecency counts. Aguilera challenged this method of amending the indictment in the appeal from his first trial. In
our prior opinion issued in this case, we held that "by reproducing the language of the original indictment with the
amendment in the order, the amendment [of the indictment] was effective." See Aguilera, 75 S.W.3d at 64 (following the
holding in Valenti v. State, 49 S.W.3d 594, 598 (Tex. App.--Fort Worth 2001, no pet.)). After we reversed his conviction
on other grounds, Aguilera was retried based on the same amended indictment. Now, on appeal from his second trial,
Aguilera raises the identical issue, contending that because the indictment itself was never physically inter-lineated, the
amendment to the indictment was not effective. This issue was addressed and rejected in our prior opinion. See Aguilera,
75 S.W.3d at 64; see also Westmoreland v. State, 174 S.W.3d 282, 287 (Tex. App.--Tyler 2005, pet. ref'd); Barfield v. State,
202 S.W.3d 912, 919 (Tex. App.--Texarkana 2006, pet. filed). We are bound by the law of the case. Hudson v. Wakefield,
711 S.W.2d 628, 630 (Tex. 1986) ("the 'law of the case' doctrine is ... that principle under which questions of law decided
on appeal ... will govern the case throughout its subsequent stages"); City of San Antonio v. San Antonio Indep. Sch. Dist.,
683 S.W.2d 67, 69 (Tex. App.--San Antonio 1984, writ ref'd n.r.e.) (law of the case doctrine applies only to questions of
law expressly considered and decided in a prior appeal). Accordingly, Aguilera's fourth issue is overruled.

 Finally, in his fifth issue, Aguilera asserts that reversible error occurred because the prosecutor mistakenly read the original
unamended indictment at the beginning of trial, which omitted the intent element of the indecency counts. Aguilera
contends he was harmed because reading the wrong indictment gave the jury the false impression that the State had a lower
burden of proof. (3) The rationale for the rule requiring the reading of the indictment to the jury is to inform the defendant of
the charges against him, to inform the jury of the charges at issue, and to allow the jury to hear the defendant refute or admit
the charges. See Tex. Code Crim. Proc. Ann. art. 36.01(a)(1) (Vernon Supp. 2006); Martinez v. State, 155 S.W.3d 491, 495
(Tex. App.--San Antonio 2004, no pet.). Without the reading of the indictment and the entry of a plea, no issue is joined for
trial. Martinez, 155 S.W.3d at 495. Here, the purposes of article 36.01(a)(1) were met because Aguilera had already been
tried and convicted once before based on the amended indictment, thus he had actual notice of the charges against him and
the essential elements; the jury was informed of the correct elements for indecency with a child during voir dire and
received a correct jury charge setting out the required elements; and the jury heard Aguilera enter his "not guilty" plea to the
indecency charges. We conclude that the State's error in reading the unamended indictment did not affect Aguilera's
substantial rights and was thus harmless. Tex. R. App. P. 44.2(b); Llamas v. State, 12 S.W.3d 469, 471 n.2 (Tex. Crim.
App. 2000); see also Simmons v. State, 106 S.W.3d 756, 760 (Tex. App.--Texarkana 2003, no pet.) (holding State's error in
reading original indictment with different description of deadly weapon than in amended indictment did not have a
substantial or injurious effect on jury's verdict and was harmless). Aguilera's fifth issue is overruled.

 Based on the foregoing reasons, the judgment of the trial court is affirmed. 



 Phylis J. Speedlin , Justice

DO NOT PUBLISH

1. Aguilera's counsel questioned Dr. Pina about why he did not use the DSM-IV scale, the trauma symptom checklist
created by John Briar, the Peers Harris Children's Self-Concept Scale, standardized tests to evaluate depression, and the
dissociative experiences scale, among others. Dr. Pina responded that none of those tests could measure whether a child
had experienced sexual abuse, and he did not find them helpful.

2. Aguilera also complains about Dr. Pina' testimony concerning malingering, but his objection to that testimony was
sustained and no answer was given; in addition, Aguilera cross-examined Dr. Pina about malingering in children. Thus, he
waived any complaint about the malingering testimony.

3. Aguilera alleges both his state and federal due process rights were violated; however, because he presents no argument
or authority that the Texas constitution provides different protection than the federal constitution, we make no distinction
between his federal and state claims. Arnold v. State, 873 S.W.2d 27, 33 (Tex. Crim. App. 1993); Sturchio v. State, 136
S.W.3d 21, 23 (Tex. App.--San Antonio 2002, no pet.).