COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MARK A. McADOO, | § | |
| | | No. 08-07-00175-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 297th District Court |
| THE STATE OF TEXAS, | § | |
| | | of Tarrant County, Texas |
| Appellee. | § | |
| | | (TC#0980926D) |
| | § | |

## O P I N I O N

Mark A. McAdoo (Appellant) was indicted and pled guilty to the felony offense of driving while intoxicated, repetition. On May 21, 2007, a hearing was held on Appellant's Motion to Suppress the Horizontal Gaze Nystagmus (HGN) test and other evidence gathered as a result of an unreasonable detention. The motion was denied. Appellant was sentenced to two years' incarceration in the Texas Department of Criminal Justice-Institutional Division pursuant to his plea agreement. A Motion for New Trial was filed on May 22, 2007 and was overruled by operation of law. Appellant filed his timely notice of appeal on May 22, 2007. On appeal, Appellant argues two issues. First, he argues that the trial court abused its discretion in failing to suppress the HGN test because HGN is unreliable. Second, he argues that the trial court erred when it overruled his Motion to Suppress all evidence gathered as a result of an unreasonable detention. Having found that trial court did not abuse its discretion in denying the Motion to Suppress, we affirm the two-year sentence for the felony offense of driving while intoxicated, repetition.

## FACTS

Just after 1 a.m. on June 3, 2005, Officer Jason Rash (Rash) of the Arlington Police

Department observed a silver BMW turn without using a turn signal. Rash pulled over the BMW. Rash explained to Appellant why he had been pulled over and asked for identification. Appellant nodded, but made no attempt to produce his identification. Rash again asked Appellant to produce identification and Appellant handed his New Mexico driver's license to Rash. Rash smelled alcohol coming from Appellant and from inside the car and observed that Appellant's eyes were bloodshot. Rash testified that Appellant had indicated he was coming from a bar that was approximately a mile from where the traffic stop occurred.

Officer Rash suspected that Appellant was intoxicated and called for backup to assist in conducting an investigation. When the backup officer arrived 12 to 15 minutes later, Rash administered standard field sobriety tests which included the HGN , the walk and turn, and the one-leg stand. Based on the results of the field sobriety tests Appellant was placed under arrest for driving while intoxicated and later charged with felony driving while intoxicated, repetition.

A hearing was held on the Appellant's Motion to Suppress. Rash testified that he received training in administration of the field sobriety tests and was certified to administer the HGN test. Rash had also attended a refresher course in administering field sobriety tests, which included instruction on the HGN test. Rash testified that nystagmus is an involuntary jerking, which can be caused by drug and alcohol use. Rash tested Appellant for a lack of smooth pursuit using the tip of a ballpoint pen as a stimulus. Each eye jerked as the pen went from left to right. Rash repeated this test twice to be sure of the results. He also checked for distinct nystagmus at maximum deviation in each eye. This test also showed jerking back and forth. Finally, Rash checked for jerking prior to forty-five degrees. This test also showed jerking well before the forty-five degree mark. The administration of the HGN test was recorded and offered into evidence by the State.

Following the denial of the Motion to Suppress, Appellant entered a plea of guilty  He was

sentenced to two years' confinement pursuant to the plea agreement.

## DISCUSSION

### HGN Reliability

In Appellant's first issue he argues that the trial court abused its discretion in failing to suppress evidence of the Horizontal Gaze Nystagmus (HGN) test because the test is unreliable, not widely accepted in the scientific community, and some states have questioned the HGN test's validity. We review a trial court's decision to admit or to exclude evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000); *see Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Crim.App. 2003). A trial court does not abuse its discretion as long as the decision to admit or to exclude the evidence is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g).

In the State of Texas in order for a scientific principle to be considered reliable the proponent must show by clear and convincing evidence that (1) the underlying scientific theory is valid; (2) the technique applying the theory is valid; and (3) the technique was properly applied on the occasion in question. *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App. 1992).

"Once a scientific principle is generally accepted in the pertinent professional community and has been accepted in a sufficient number of trial courts through adversarial *Daubert/Kelly* hearings, subsequent courts may take judicial notice of the scientific validity (or invalidity) of that scientific theory based upon the process, materials, and evidence produced in those prior hearings." *Hernandez v. State*, 116 S.W.3d 26, 29 (Tex.Crim.App. 2003). Courts can also take judicial notice of the reliability or unreliability and validity of a specific methodology to implement or test the particular scientific theory. *Id*.

The State of Texas has taken judicial notice of the reliability of the theory underlying the

HGN test and the reliability of its administration. *Emerson v. State*, 880 S.W.2d 759, 768-769 (Tex.Crim.App. 1994). In *Emerson*, the Texas Court of Criminal Appeals recognized that "[t]he taking of judicial notice of a fact outside the record is part of the inherent power and function of every court . . . ." *Id*. at 765. The *Emerson* Court performed a review of statistics regarding the HGN test and its administration. Specifically, the Court of Criminal Appeals noted that the accuracy of the test is 77 percent when a suspect scores four or more points on the HGN test. *Id*. at 767. The *Emerson* Court also noted that nystagmus can be caused by factors like other drugs, medical disorders, and brain damage. *Id*. at 766. However, the *Emerson* Court was careful to point out that the HGN test is usually administered with other field sobriety tests, and when the HGN test is used in conjunction with other test the accuracy rate jumps to 80 percent. *Id*. at 767.

By taking judicial notice of the HGN test's reliability, prosecutors have been relieved of the requirement of putting a medical doctor or scientists on the stand to testify as to the underlying scientific theory behind the HGN test and its reliability. *See Emerson*, 880 S.W.2d 759. Prosecutors must still establish that the administering officer is an expert in HGN and holds practitioner certification by the State of Texas to administer the HGN. *Id*. at 769.

Nothing presented by Appellant warrants the overruling of fifteen years of precedent. Most of the arguments made by Appellant were reviewed by the *Emerson* Court when they took judicial notice of the reliability of the HGN test. As recently as February of 2009, the Texas Court of Criminal Appeals has stated that the HGN test is a reliable indicator of intoxication. *Layton v. State*, 280 S.W.3d 235, 238 n.2 (Tex.Crim.App. 2009). Appellant also argues that *Kumho Tire Co., Ltd. v. Carmichael* impacts the *Emerson* decision. We find this argument unpersuasive. *Kumho* merely applies the *Daubert* framework to technical as well as to scientific evidence, but does not limit a court's ability to take judicial notice of the reliability of either a technical or scientific principle. *See*

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-48, 119 S.Ct. 1167 (1999).

Moreover, the HGN test is simply a reliable indicator of intoxication and is not used to establish a specific blood alcohol content. *Emerson*, 880 S.W.2d at 769. Section 49.04 of the Texas Penal Code prohibits a person from operating a motor vehicle in a public place while in a state of intoxication. "Intoxicated" in the Texas Penal Code Section 49.01(2) is defined as either: "loss of faculties" or "per se" intoxication (i.e., .08 or more alcohol concentration). Field sobriety results are merely circumstantial and normally just pieces of the State's overall case. *Martinez v. State*, 155 S.W.3d 491, 496 (Tex.App.–San Antonio 2004, no pet.). We find the trial court did not abuse it discretion in failing to suppress the evidence of the HGN test. Accordingly, Appellant's first issue is overruled.

**Unreasonable Detention and Suppression**

In Appellant's second issue he argues that the arresting officer's delay in administering the field sobriety test, while waiting for his backup officer to arrive, unreasonably prolonged his detention.

We review a trial court's decision to admit or to exclude evidence under an abuse of discretion standard. *Weatherred*, 15 S.W.3d at 542; *see Zuliani*, 97 S.W.3d at 595. A trial court does not abuse its discretion as long as the decision to admit or to exclude the evidence is within the zone of reasonable disagreement. *Montgomery*, 810 S.W.2d at 391. We review the reasonableness of a search or seizure under the Fourth Amendment *de novo*. *Kothe v. State*, 152 S.W.3d 54, 62-63 (Tex.Crim.App. 2004). Reasonableness is ultimately a question of substantive Fourth Amendment law. *Id*.

Police are permitted to stop and briefly detain persons suspected of criminal activity if the officer has specific articulable facts, which through reasonable inferences could lead an officer to

believe that the person has or will soon commit a crime. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). Fourth Amendment "reasonableness" is a fact-specific inquiry, which is conducted by objectively looking at the totality of the circumstances. *Kothe*, 152 S.W.3d at 63.

The reasonableness of an investigative detention requires a two-prong analysis. *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879 (1968). We examine (1) whether the officers's action was justified at its inception and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Id*. When a traffic violation occurs in an officer's presence, the officer has probable cause to lawfully stop the driver and detain or arrest. *Williams v. State*, 726 S.W.2d 99, 100-01 (Tex.Crim.App. 1986). Here the Appellant does not challenge the propriety of the initial stop which resulted from Appellant's failure to signal on a left turn.

Traffic stops are considered a seizure and must be constitutionally reasonable under the particular circumstances. *Whren v. United States*, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 1772 (1996). No bright-line time limitation exists. *United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575 (1985). The reasonableness of the detention depends on whether the detaining officers pursued a means of investigation that was likely to dispel or confirm their suspicions quickly and last no longer than is necessary to effectuate the purpose of the stop. *Balentine*, 71 S.W.3d at 770.

When making a reasonableness determination, as to the duration of a detention, the courts may consider legitimate law enforcement purposes served by any delay in the officer's investigation. *Sharpe*, 470 U.S. at 685, 105 S.Ct. at 1575. We must also weigh the public interest served by a detention against the individual's right to be free from arbitrary detentions and intrusion. *Kothe*, 152 S.W.3d at 62; *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09, 98 S.Ct. 330, 332 (1977).

In the present case Appellant was pulled over for failing to signal while turning left. Rash smelled alcohol coming from the Appellant's person and his eyes were bloodshot. At this point Rash

formed the suspicion that Appellant was intoxicated so he requested the assistance of a backup officer. The approximate wait time before the backup officer arrived was between 12 and 15 minutes; however, the State argues that the wait time was less.

Based on a review of all the facts in the record and looking at the totality of the circumstances, we find that the detention was reasonable and that the judge did not abuse his discretion in not granting Appellant's Motion to Suppress. While it is true that Rash did not proffer a reason for the 12 to 15 minute delay, we review the case *de novo* and examine the entire record to determine whether the detention was reasonable under the circumstances.

At the time Appellant was pulled over he was accompanied by an individual who was later arrested for public intoxication. As the State points out, Rash would have been required to control both the Appellant and the passenger while at the same time administer the field sobriety tests. It is entirely reasonable that Rash called for backup for his own safety and to prevent the passenger from interfering with the administration of the field sobriety tests. A DVD shown at the hearing on the Motion to Suppress shows that when the backup officer arrived he called out to the passenger to stay in the car and maintained control over the passenger by keeping him in the vehicle. The backup officer also assisted with the camera when the Appellant and Rash moved out of the camera's field of view. The backup officer assisted Rash with the arrest of both the Appellant and the passenger.

In *Hartman v. State*, 144 S.W.3d 568, 573 (Tex.App.–Austin 2004, no pet.), the court held that a five to fifteen minute delay was reasonable so that another officer could bring a video camera to record a DWI investigation. Also, as the State points out, some of the 12 to 15 minute wait would have been used to check for warrants, license, and vehicle registration, which is required during a traffic stop. *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex.App.–Fort Worth 1998, pet. ref'd).

Given the legitimate need for officer safety and the need for assistance in dealing with two intoxicated individuals, legitimate law enforcement purposes were served by the 12 to 15 minute detention and any inconvenience to the Appellant is overshadowed. Rash acted in a prudent and responsible manner, and under these facts a 12 to 15 minute delay is not unreasonable. We find that the 12 to 15 minute detention was reasonably related in scope to the circumstances which initially justified the stop and investigation. For the foregoing reasons we find that the trial court did not abuse its discretion in denying the Appellant's Motion to Suppress. Appellant's second issue is overruled, and we affirm the judgment of the trial court.

GUADALUPE RIVERA, Justice

June 10, 2009

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)