COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS


MARK A. McADOO,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-07-00175-CR



Appeal from the


297th District Court


of Tarrant County, Texas


(TC#0980926D)


O P I N I O N


 Mark A. McAdoo (Appellant) was indicted and pled guilty to the felony offense of driving
while intoxicated, repetition. On May 21, 2007, a hearing was held on Appellant's Motion to
Suppress the Horizontal Gaze Nystagmus (HGN) test and other evidence gathered as a result of an
unreasonable detention. The motion was denied. Appellant was sentenced to two years'
incarceration in the Texas Department of Criminal Justice-Institutional Division pursuant to his plea
agreement. A Motion for New Trial was filed on May 22, 2007 and was overruled by operation of
law. Appellant filed his timely notice of appeal on May 22, 2007. On appeal, Appellant argues two
issues. First, he argues that the trial court abused its discretion in failing to suppress the HGN test
because HGN is unreliable. Second, he argues that the trial court erred when it overruled his Motion
to Suppress all evidence gathered as a result of an unreasonable detention. Having found that trial
court did not abuse its discretion in denying the Motion to Suppress, we affirm the two-year sentence
for the felony offense of driving while intoxicated, repetition.

FACTS

 Just after 1 a.m. on June 3, 2005, Officer Jason Rash (Rash) of the Arlington Police
Department observed a silver BMW turn without using a turn signal. Rash pulled over the BMW. 
Rash explained to Appellant why he had been pulled over and asked for identification. Appellant
nodded, but made no attempt to produce his identification. Rash again asked Appellant to produce
identification and Appellant handed his New Mexico driver's license to Rash. Rash smelled alcohol
coming from Appellant and from inside the car and observed that Appellant's eyes were bloodshot. 
Rash testified that Appellant had indicated he was coming from a bar that was approximately a mile
from where the traffic stop occurred. 

 Officer Rash suspected that Appellant was intoxicated and called for backup to assist in
conducting an investigation. When the backup officer arrived 12 to 15 minutes later, Rash
administered standard field sobriety tests which included the HGN , the walk and turn, and the one-leg stand. Based on the results of the field sobriety tests Appellant was placed under arrest for
driving while intoxicated and later charged with felony driving while intoxicated, repetition. 

 A hearing was held on the Appellant's Motion to Suppress. Rash testified that he received
training in administration of the field sobriety tests and was certified to administer the HGN test. 
Rash had also attended a refresher course in administering field sobriety tests, which included
instruction on the HGN test. Rash testified that nystagmus is an involuntary jerking, which can be
caused by drug and alcohol use. Rash tested Appellant for a lack of smooth pursuit using the tip of
a ballpoint pen as a stimulus. Each eye jerked as the pen went from left to right. Rash repeated this
test twice to be sure of the results. He also checked for distinct nystagmus at maximum deviation
in each eye. This test also showed jerking back and forth. Finally, Rash checked for jerking prior
to forty-five degrees. This test also showed jerking well before the forty-five degree mark. The
administration of the HGN test was recorded and offered into evidence by the State.

 Following the denial of the Motion to Suppress, Appellant entered a plea of guilty He was
sentenced to two years' confinement pursuant to the plea agreement. 

DISCUSSION 

 HGN Reliability

 In Appellant's first issue he argues that the trial court abused its discretion in failing to
suppress evidence of the Horizontal Gaze Nystagmus (HGN) test because the test is unreliable, not
widely accepted in the scientific community, and some states have questioned the HGN test's
validity. We review a trial court's decision to admit or to exclude evidence under an abuse of
discretion standard. Weatherred v. State, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000); see Zuliani
v. State, 97 S.W.3d 589, 595 (Tex.Crim.App. 2003). A trial court does not abuse its discretion as
long as the decision to admit or to exclude the evidence is within the zone of reasonable
disagreement. Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g).

 In the State of Texas in order for a scientific principle to be considered reliable the proponent
must show by clear and convincing evidence that (1) the underlying scientific theory is valid; (2) the
technique applying the theory is valid; and (3) the technique was properly applied on the occasion
in question. Kelly v. State, 824 S.W.2d 568, 573 (Tex.Crim.App. 1992).

 "Once a scientific principle is generally accepted in the pertinent professional community and
has been accepted in a sufficient number of trial courts through adversarial Daubert/Kelly hearings,
subsequent courts may take judicial notice of the scientific validity (or invalidity) of that scientific
theory based upon the process, materials, and evidence produced in those prior hearings." 
Hernandez v. State, 116 S.W.3d 26, 29 (Tex.Crim.App. 2003). Courts can also take judicial notice
of the reliability or unreliability and validity of a specific methodology to implement or test the
particular scientific theory. Id.

 The State of Texas has taken judicial notice of the reliability of the theory underlying the
HGN test and the reliability of its administration. Emerson v. State, 880 S.W.2d 759, 768-769
(Tex.Crim.App. 1994). In Emerson, the Texas Court of Criminal Appeals recognized that "[t]he
taking of judicial notice of a fact outside the record is part of the inherent power and function of
every court . . . ." Id. at 765. The Emerson Court performed a review of statistics regarding the
HGN test and its administration. Specifically, the Court of Criminal Appeals noted that the accuracy
of the test is 77 percent when a suspect scores four or more points on the HGN test. Id. at 767. The
Emerson Court also noted that nystagmus can be caused by factors like other drugs, medical
disorders, and brain damage. Id. at 766. However, the Emerson Court was careful to point out that
the HGN test is usually administered with other field sobriety tests, and when the HGN test is used
in conjunction with other test the accuracy rate jumps to 80 percent. Id. at 767.

 By taking judicial notice of the HGN test's reliability, prosecutors have been relieved of the
requirement of putting a medical doctor or scientists on the stand to testify as to the underlying
scientific theory behind the HGN test and its reliability. See Emerson, 880 S.W.2d 759. Prosecutors
must still establish that the administering officer is an expert in HGN and holds practitioner
certification by the State of Texas to administer the HGN. Id. at 769.

 Nothing presented by Appellant warrants the overruling of fifteen years of precedent. Most
of the arguments made by Appellant were reviewed by the Emerson Court when they took judicial
notice of the reliability of the HGN test. As recently as February of 2009, the Texas Court of
Criminal Appeals has stated that the HGN test is a reliable indicator of intoxication. Layton v. State,
280 S.W.3d 235, 238 n.2 (Tex.Crim.App. 2009). Appellant also argues that Kumho Tire Co., Ltd.
v. Carmichael impacts the Emerson decision. We find this argument unpersuasive. Kumho merely
applies the Daubert framework to technical as well as to scientific evidence, but does not limit a
court's ability to take judicial notice of the reliability of either a technical or scientific principle. See 
Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147-48, 119 S.Ct. 1167 (1999).

 Moreover, the HGN test is simply a reliable indicator of intoxication and is not used to
establish a specific blood alcohol content. Emerson, 880 S.W.2d at 769. Section 49.04 of the Texas
Penal Code prohibits a person from operating a motor vehicle in a public place while in a state of
intoxication. "Intoxicated" in the Texas Penal Code Section 49.01(2) is defined as either: "loss of
faculties" or "per se" intoxication (i.e., .08 or more alcohol concentration). Field sobriety results are
merely circumstantial and normally just pieces of the State's overall case. Martinez v. State, 155
S.W.3d 491, 496 (Tex.App.-San Antonio 2004, no pet.). We find the trial court did not abuse it
discretion in failing to suppress the evidence of the HGN test. Accordingly, Appellant's first issue
is overruled.

 Unreasonable Detention and Suppression

 In Appellant's second issue he argues that the arresting officer's delay in administering the
field sobriety test, while waiting for his backup officer to arrive, unreasonably prolonged his
detention.

 We review a trial court's decision to admit or to exclude evidence under an abuse of
discretion standard. Weatherred, 15 S.W.3d at 542; see Zuliani, 97 S.W.3d at 595. A trial court
does not abuse its discretion as long as the decision to admit or to exclude the evidence is within the
zone of reasonable disagreement. Montgomery, 810 S.W.2d at 391. We review the reasonableness
of a search or seizure under the Fourth Amendment de novo. Kothe v. State, 152 S.W.3d 54, 62-63
(Tex.Crim.App. 2004). Reasonableness is ultimately a question of substantive Fourth Amendment
law. Id.

 Police are permitted to stop and briefly detain persons suspected of criminal activity if the
officer has specific articulable facts, which through reasonable inferences could lead an officer to
believe that the person has or will soon commit a crime. Balentine v. State, 71 S.W.3d 763, 768
(Tex.Crim.App. 2002). Fourth Amendment "reasonableness" is a fact-specific inquiry, which is
conducted by objectively looking at the totality of the circumstances. Kothe, 152 S.W.3d at 63.

 The reasonableness of an investigative detention requires a two-prong analysis. Terry v.
Ohio, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879 (1968). We examine (1) whether the officers's action
was justified at its inception and (2) whether it was reasonably related in scope to the circumstances
which justified the interference in the first place. Id. When a traffic violation occurs in an officer's
presence, the officer has probable cause to lawfully stop the driver and detain or arrest. Williams v.
State, 726 S.W.2d 99, 100-01 (Tex.Crim.App. 1986). Here the Appellant does not challenge the
propriety of the initial stop which resulted from Appellant's failure to signal on a left turn.

 Traffic stops are considered a seizure and must be constitutionally reasonable under the
particular circumstances. Whren v. United States, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 1772
(1996). No bright-line time limitation exists. United States v. Sharpe, 470 U.S. 675, 685, 105 S.Ct.
1568, 1575 (1985). The reasonableness of the detention depends on whether the detaining officers
pursued a means of investigation that was likely to dispel or confirm their suspicions quickly and
last no longer than is necessary to effectuate the purpose of the stop. Balentine, 71 S.W.3d at 770.

 When making a reasonableness determination, as to the duration of a detention, the courts
may consider legitimate law enforcement purposes served by any delay in the officer's investigation. 
Sharpe, 470 U.S. at 685, 105 S.Ct. at 1575. We must also weigh the public interest served by a
detention against the individual's right to be free from arbitrary detentions and intrusion. Kothe, 152
S.W.3d at 62; Pennsylvania v. Mimms, 434 U.S. 106, 108-09, 98 S.Ct. 330, 332 (1977).

 In the present case Appellant was pulled over for failing to signal while turning left. Rash
smelled alcohol coming from the Appellant's person and his eyes were bloodshot. At this point Rash
formed the suspicion that Appellant was intoxicated so he requested the assistance of a backup
officer. The approximate wait time before the backup officer arrived was between 12 and 15
minutes; however, the State argues that the wait time was less. 

 Based on a review of all the facts in the record and looking at the totality of the
circumstances, we find that the detention was reasonable and that the judge did not abuse his
discretion in not granting Appellant's Motion to Suppress. While it is true that Rash did not proffer
a reason for the 12 to 15 minute delay, we review the case de novo and examine the entire record to
determine whether the detention was reasonable under the circumstances.

 At the time Appellant was pulled over he was accompanied by an individual who was later
arrested for public intoxication. As the State points out, Rash would have been required to control
both the Appellant and the passenger while at the same time administer the field sobriety tests. It
is entirely reasonable that Rash called for backup for his own safety and to prevent the passenger
from interfering with the administration of the field sobriety tests. A DVD shown at the hearing on
the Motion to Suppress shows that when the backup officer arrived he called out to the passenger
to stay in the car and maintained control over the passenger by keeping him in the vehicle. The
backup officer also assisted with the camera when the Appellant and Rash moved out of the camera's
field of view. The backup officer assisted Rash with the arrest of both the Appellant and the
passenger.

 In Hartman v. State, 144 S.W.3d 568, 573 (Tex.App.-Austin 2004, no pet.), the court held
that a five to fifteen minute delay was reasonable so that another officer could bring a video camera
to record a DWI investigation. Also, as the State points out, some of the 12 to 15 minute wait would
have been used to check for warrants, license, and vehicle registration, which is required during a
traffic stop. Mohmed v. State, 977 S.W.2d 624, 628 (Tex.App.-Fort Worth 1998, pet. ref'd).

 Given the legitimate need for officer safety and the need for assistance in dealing with two
intoxicated individuals, legitimate law enforcement purposes were served by the 12 to 15 minute
detention and any inconvenience to the Appellant is overshadowed. Rash acted in a prudent and
responsible manner, and under these facts a 12 to 15 minute delay is not unreasonable. We find that
the 12 to 15 minute detention was reasonably related in scope to the circumstances which initially
justified the stop and investigation. For the foregoing reasons we find that the trial court did not
abuse its discretion in denying the Appellant's Motion to Suppress. Appellant's second issue is
overruled, and we affirm the judgment of the trial court.


 GUADALUPE RIVERA, Justice

June 10, 2009


Before Chew, C.J., McClure, and Rivera, JJ.


(Do Not Publish)